No. 25,172.

E. Dixon, *Appellee,* v. The Continental Oil and Refining Company, *Appellant.*

SYLLABUS BY THE COURT.

Damages—*Flooding Grassland and Well of Water—No Reversible Error in Record.* In an action for damages to grassland, to a well, and for the unauthorized occupancy of land, the record examined, and no error in the evidence, instructions, verdict, or judgment disclosed.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed July 5, 1924. Affirmed.

*W. N. Banks, O. L. O'Brien,* and *Walter L. McVey,* all of Independence, for the appellant.

*Thurman Hill,* of Independence, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages to a farm through the negligence of the lessee of the oil and gas rights thereon.

The lessee had developed several producing oil wells on plaintiff's farm, and several wells on another farm, known as the Furnas property, adjacent thereto. According to plaintiff's petition, defendant had negligently permitted salt water pumped from these oil wells to flow over and ruin four acres of plaintiff's grassland, also to ruin a well, and that defendant had deprived plaintiff of the use of two acres of land by laying shackle-rods, lines and stakes thereon for the purpose of pumping the oil wells on the neighboring Furnas property. Plaintiff asked damages, viz.: To four acres of grassland, $200; to well, $50; to unauthorized occupancy of two acres of land for shackle rods, etc.; to pump wells on Furnas lease, for two years, $80.

Defendant answered, among other matters, that prior to October 18, 1918, plaintiff had made a similar complaint to that contained in his petition, and that he then entered into negotiations with defendant which culminated in a written agreement composed of all matters of controversy between the parties. This agreement reads:

"AGREEMENT.

"In consideration of the Continental Oil and Refining Company making improvement upon a ditch running along fence on the west line of the Furnas land, about six hundred feet, so that the salt water will empty back in a natural watercourse on the Dixon farm, I hereby agree that when said improvement is made, to be satisfied in every particular.

"Dated this 18th day of October, 1918.

"THE CONTINENTAL OIL AND REFINING COMPANY,
                    By A. W. SHULTHIS, President.
                          B. M. FURNAS.
                          E. DIXON."

Defendant alleged that it had complied with this agreement. It also pleaded the statute of limitations as a bar to the action.

Plaintiff replied that the ditch dug by defendant was insufficient in size to carry the salt water back into the designated natural watercourse, which resulted in the damages to his grassland and well as alleged in his petition.

Jury trial; verdict of $155 for plaintiff; judgment thereon; appeal.

Defendant presents a formal assignment of errors, but does not follow it seriatum in its brief; so the court is compelled to ignore the assignment and note whatever is broached in defendant's argument as containing the possibility of error.

It is suggested that since the action, in part, was for permanent damages to the four acres of grassland, the court should not have

permitted testimony to be introduced concerning the loss of the hay. But the fact that the salt water had rendered the land unproductive for hay was certainly some evidence of permanent damage to the land.

Defendant contends that there was no competent evidence to show damages to the well. The testimony was that it had been a well of wholesome water; that it occasionally served the owner's convenience for watering his teams and his cattle, and that it had been ruined by salt water from defendant's oil wells. As to its value before its destruction, the testimony was—

"Q. State to the jury what the fair and reasonable value of that well was in 1921 before it was filled up with salt water, if you know? A. I would not have taken $50 for it.

"Q. Now after it was polluted with salt water, what was its value? A. Well, it is no good; stock won't drink it."

The testimony, "I would not have taken $50 for it," was the typical language of a farmer in expressing values of matters and things with which he is familiar. It was competent in substance, and the form of expression was immaterial.

It is also contended that the written agreement of 1918 disposed of the controversy concerning damages to the four acres of grass-land. The agreement speaks for itself, but plaintiff's evidence tended to show that the agreement was not complied with, in that no sufficient ditch was dug to dispose of the salt water. Plaintiff's testimony reads:

"The ditch was dug from the north to the south, about 2 feet from the Furnas land, running north and south. Says that the north end of the ditch was 400 ft. or 500 ft. from the stream. The wells were not making much salt water at the time the agreement was drawn. At that time the salt water was running down across his place. After the agreement was drawn the ditch took care of the salt water until about 1921, when the wells increased the salt water, when they pumped them day and night almost. This was about August, 1921. The excess salt water then just flowed over that patch of ground whenever it could get away. That was the first time it had flowed over that patch of ground (referring to the meadow complained of). This occupied between three and four acres. Before this grass had grown there. The land is of no use now and gets nothing off of it."

The defendant bound itself by the agreement to dig a ditch which would convey the salt water to a natural watercourse. It cannot be admitted that when the salt water is permitted to flow over and damage or ruin four acres of meadow that such agreement has been complied with according to its tenor and intent.

It is argued that plaintiff's action is barred by the statute of limitations. Whether any damage by the salt water up to 1918 was barred or not, the damage ensuing since the agreement of 1918 was made and broken was not barred,' neither by the pleadings nor by the evidence. A litigant who relies on the statute of limitations for reversible error ought to set out the dates or specify the limitation periods on which he relies. They are not shown by the record presented.

It is contended that the evidence was insufficient to show damages for the wrongful occupancy of plaintiff's land with rods, stakes, etc., used as equipment to pump the oil wells on the Furnas lease. There was testimony that adjacent land produced crops worth $20 per acre per annum and that two-thirds of that sum was profit. Since the total verdict for plaintiff was only for $155 and the jury was not asked to itemize, and there was some evidence to show substantial damages on each of the items of damage alleged, it is impossible to trace error into the amount of the verdict and judgment.

Affirmed.